IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**BARBARA ANN WELCH,**                                                                                     **PLAINTIFF**

**v.**                        **CIVIL ACTION NO. 3:14-CV-141-SAA**

**CAROLYN W. COLVIN,**
**COMMISSIONER OF SOCIAL SECURITY**                          **DEFENDANT**

<u>**MEMORANDUM OPINION**</u>

This is an appeal under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's decision denying plaintiff Barbara Ann Welch's application for a period of disability (POD) and disability insurance benefits (DIB) under Title II of the Social Security Act. Plaintiff filed an application for DIB on February 17, 2012, originally alleging disability beginning October 30, 2009 and later amended that date to January 13, 2012. Docket 10, p. 132, 219-21. The agency denied her application initially on and upon reconsideration. Docket 10, p. 80-83, 85-87. Plaintiff then requested a hearing, which an Administrative Law Judge ("ALJ") held on September 16, 2013. Docket 10, p. 31-51. The ALJ issued an unfavorable decision on December 16, 2013 (Docket 10, p. 19-29), and the Appeals Council denied plaintiff's request for a review on May 19, 2014, Docket 10, p. 1. Plaintiff timely filed this appeal from the decision, and it is now ripe for review. Because both parties consented to have a magistrate judge conduct all proceedings in this case as provided in 28 U.S.C. § 636(c), the undersigned has the authority to issue this opinion and the accompanying final judgment.

**I. FACTS**

Plaintiff was born March 23, 1964 and was 47 to 49 years old during the adjudication period (January 13, 2012 through December 16, 2013). Docket 10, p. 34, 45. She graduated

from high school, completed one year of college, and attended additional schooling to become a certified nurse's assistant. Docket 10, pp. 38-39. She was previously employed as a certified nurse's assistant and a machine operator. Docket 10, pp. 38-39, 47, 157-158. Plaintiff alleged she was unable to work after her onset date due to various impairments however, upon review the plaintiff has asserted error only regarding her claim of depression. Docket 10, p. 152, p. 138, 147, 165, 179.

In evaluating the plaintiff's disability claim, the ALJ proceeded through the Social Security Administration's five-step sequential evaluation process. 20 C.F.R. 404.1520(a); *see also* Docket 10, p. 12-30. Within that process, the ALJ determined that the claimant meets the insured status requirements of the Social Security Act through December 31, 2014 and has not engaged in substantial gainful activity since the alleged onset date. Docket 10, p. 17. Also, the ALJ determined that plaintiff suffered from the severe impairment of depression. Docket 10, p. 17. However, in light of medical treatment records and testimony, the ALJ concluded that the claimant's impairment did not meet or medically equal the severity of a listed impairment, most notably Listing 12.04. Docket 10, p. 18-20.

The plaintiff asserts the ALJ failed to apply proper legal standards when she improperly weighed the opinions of the plaintiff's treating psychiatrist and a consultative psychologist. Docket 13, 16. The plaintiff also asserts that the ALJ erred in relying on improper vocational expert testimony. Docket 13, 16.

## II. EVALUATION PROCESS

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. The burden rests upon plaintiff

throughout the first four steps of this process to prove disability and if plaintiff is successful in sustaining her burden at each of the first four levels, the burden then shifts to the Commissioner at step five. *See Crowley v. Apfel,* 197 F.3d 194, 198 (5th Cir. 1999). First, plaintiff must prove she is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the plaintiff must prove her impairment(s) are "severe" in that they "significantly limit [her] physical or mental ability to do basic work activities . . .." 20 C.F.R. § 404.1520(c). At step three the ALJ must conclude plaintiff is disabled if she proves that her impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2010). 20 C.F.R. § 404.1520(d). If plaintiff does not meet this burden, at step four she must prove she is incapable of meeting the physical and mental demands of her past relevant work. 20 C.F.R. § 404.1520(e). At step five, the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and past work experience, that she is capable of performing other work. 20 C.F.R § 404.1520(g). If the Commissioner proves other work exists which plaintiff can perform, plaintiff is given the chance to prove that she cannot, in fact, perform that work. *See Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).

### III. STANDARD OF REVIEW

The court considers on appeal whether the Commissioner's final decision is supported by substantial evidence and whether the Commissioner used the proper legal standards. *Crowley*, 197 F.3d at 196, citing *Austin v. Shalala*, 994 F.2d 1170 (5th Cir. 1993); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990). In making that determination, the court has the responsibility to scrutinize the entire record. *Ransom v. Heckler*, 715 F.2d 989, 992 (5th Cir. 1983). The court has limited power of review and may not reweigh the evidence or substitute its judgment for that of

the Commissioner, *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988), even if it finds the evidence leans against the Commissioner's decision. *See Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *see also Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

The Fifth Circuit has held that substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crowley*, 197 F.3d at 197 (citation omitted). Conflicts in the evidence are for the Commissioner to decide, and if there is substantial evidence to support the decision, it must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). However, an ALJ "is not at liberty to make a medical judgment regarding the ability or disability of a claimant . . . where such inference is not warranted by clinical findings. *Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir. 2000). The court's inquiry is whether the record, as a whole, provides sufficient evidence that would allow a reasonable mind to accept the ALJ's conclusions. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Crowley*, 197 F.3d at 197. "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994), citing *Richardson*, 402 U.S. at 390.

## IV.  DISCUSSION

Plaintiff argues on appeal that the ALJ erred by not affording proper weight to the opinions of both her treating psychiatrist, Dr. Anthony Jackson, and a DDS-requested consultative psychologist, Dr. Brian Thomas in violation of 20 C.F.R. § 404.1527. Docket 13, 16. Specifically, the plaintiff cites that the ALJ afforded the most weight to a Mental Residual Functional Capacity Assessment form completed by a non-examining state agency consultant,

4

Dr. Glenda Scallorn, roughly a year and a half before the ALJ hearing rather than a comparable examining consultative report or a treating source's opinion. Docket 13, 16.

The Commissioner responds that the ALJ's decisions regarding weight given to the doctors' opinions were substantially justified. First, says the Commissioner, Dr. Jackson's opinion should not be afforded the usual deference given to treating physicians because he "did not appear to have personally treated Plaintiff, but rather succeeded Plaintiff's treating psychiatrist at Communicare." Docket 15, p. 12. With regard to Dr. Thomas, the Commissioner argues the ALJ did not reject his opinion entirely and notes that the ALJ actually used part of Dr. Thomas's opinion in assessing the plaintiff's residual functional capacity ("RFC"). Docket 15, p. 11.

The law regarding treatment of an opinion from a treating source or treating physician is clear. Unless there is contrary medical evidence, an ALJ must afford the treating physician's opinions significant weight in making his determination of disability. *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000). "[A]n ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). In performing that analysis the ALJ must evaluate the opinion with specific consideration of both the *examining relationship* and the *treatment relationship* between the medical professional and the patient. 20 C.F.R. § 404.1527(c).[1]

---

[1] 20 C.F.R. § 404.1527(c). More specifically, the regulations provide the following explanation for how those factors must be evaluated:
> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
>
> (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources,

5

In this instance, the ALJ felt affording Dr. Jackson's opinion limited weight was appropriate, "since he is not exactly a treating source." Docket 10, p. 23. To substantiate this, the ALJ observed that Dr. Jackson, "identifies himself as the claimant's treating psychiatrist; however, there is no record in evidence where he has treated or evaluated the claimant. He appears to be the succeeding psychiatrist at Communicare and as such has access to the claimant's treatment records there, but himself has never treated her." Docket 10, p. 21. Put simply, this disregard of Dr. Jackson's opinion was error.

Although the ALJ correctly assumed that Dr. Jackson appears to have succeeded the original treating psychiatrist at Communicare, this does not mean his opinion should not have been afforded the deference reserved for a treating source. This is true even if one ignored that the ALJ all but admits that Dr. Jackson is in fact the plaintiff's treating psychiatrist when she acknowledges that he "succeeded Plaintiff's treating psychiatrist at Communicare;" more

---

since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion . . . is well-supported . . . we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section . . .in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

(i) Length of the treatment relationship and the frequency of examination. Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source.

(ii) Nature and extent of the treatment relationship. Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion. We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories . . . When the treating source has reasonable knowledge of your impairment(s), we will give the source's opinion more weight than we would give it if it were from a nontreating source.

6

importantly, the records establish without question that Dr. Jackson fulfilled the exact role in the plaintiff's treatment as his predecessor. Docket 15, p. 12. As overseeing psychiatrist of Communicare, the facility which treated the plaintiff *for depression* for nearly two years leading up to the ALJ hearing, Dr. Jackson should have been afforded deference as a treating source. After all, a treating source is defined as,

> your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you. Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s).

20 C.F.R. § 404.1502. If Communicare's well-documented treatment of the plaintiff and Dr. Jackson's psychiatric oversight did not rise to a level worthy of receiving deference as a treating source, the court must ask, what then would be expected? Communicare's mental health professionals treated the plaintiff *for depression* approximately twenty-seven times between February 2012 until September of 2013. Docket 10, pp. 398-419, 485-520. Review of those records reveals they are replete with evidence that supports the plaintiff's contention that her depression met the Listing 12.04 requirements.[2]

Despite Dr. Jackson's role as supervising psychiatrist over the consistent and documented treatment of the plaintiff's depression, the ALJ concluded that his opinion should be granted little

---

[2] *See* Docket 10, pp. 398-419, 485-520. Throughout a treatment history spanning roughly nineteen months, the plaintiff's records from Communicare document symptoms that mimic almost exactly the Listing 12.04 requirements. Those symptoms include, but were not limited to pervasive loss of interest in almost all activities, appetite disturbances, sleep disturbances, decreased energy, feelings of guilt or worthlessness, thoughts of suicide, and hallucinations throughout.

credence. Docket 10, p. 27. Instead, the ALJ elected to rely on the opinion of non-treating, non-examining state agency consultant, Dr. Scallorn. Docket 10, p. 19-24. 368-85. This district has addressed the role of the state agency consultant before,

> [t]hese doctors undoubtedly perform valuable services for both the Social Security Administration and claimants by conducting early screenings of cases. . . . These screenings do not involve examinations and because they are usually done early in the process, are typically based on limited medical records. The physician's report was made very early in the process and based only on limited records. These findings are therefore of limited value by the time the case progresses to the hearing stage. When contradicted by treating physicians and examining physician's reports, these preliminary opinions do not constitute substantial evidence as a matter of law.

*Baker v. Astrue*, Civil Action No. 3:11-cv-3-DAS, N.D. Miss., citing *Villa v. Sullivan*, 895 F. 2d 1019 (5th Cir. 1990)."

Based on medical records available to her at the time of the consultation in March 2012, Dr. Scallorn noted that the plaintiff's records exhibited, "no significant issues with depression ongoing" and that her prior filing had, "no mention of depression [or] anxiety from 2/06 until present." Docket 10, p. 380. However, the plaintiff's asserted disability onset date was January 2012. Docket 10, p. 219-21. Her treatment for depression with Communicare did not begin until February 2012. At the time of Dr. Scallorn's consultation, then, there would have been little development of that issue.

Despite the ALJ only relying on Dr. Scallorn's opinion to conclude that the plaintiff's disability did not meet a listing, she was not the only state agency consultant to evaluate plaintiff in March 2012. On March 15, 2012, Dr. Brian Thomas completed a consultative examination at the request of the Mississippi DDS. Docket 10, p. 452-54. Dr. Thomas's diagnostic impression

8

was that the plaintiff suffered from major depression and anxiety disorders. Docket 10, p. 452-54. Dr. Thomas noted that the plaintiff's prognosis over the next twelve months appeared to be "questionable with treatment," and he made specific reference to the fact that "[o]btaining ongoing mental health records would likely be helpful." Docket 10, p. 453-54. Even with the temporal proximity of these two assessments – one based on an actual examination of the patient, and the other based on a review of her medical records – the ALJ still elected to ignore the examiner Dr. Thomas's assessment and instead placed primary reliance on Dr. Scallorn's assessment.

Both of these one-time consultations took place in March 2012, but the administrative record contains a much more contemporary medical opinion by plaintiff's long-term treating source, as well as accompanying treatment records. In his role as supervising psychiatrist over the plaintiff's ongoing treatment at Communicare, Dr. Jackson submitted a Mental Impairment Questionnaire (MIQ) in early September 2013. Docket 10, pp. 606-12. Within that MIQ, Dr. Jackson reported that the plaintiff suffered from "major depression, single episode severe w/ psychotic features" and that she was not a malingerer. Docket 10, p. 606, 608. Among a plethora of other symptoms, many of which are included in the 12.04 Listing requirements, Dr. Jackson noted that the plaintiff exhibited sleep disturbances; mood disturbances; social withdrawal or isolation; delusions or hallucinations; decreased energy; and feelings of guilt/worthlessness. Docket 10, p. 606-07. Dr. Jackson also noted that the plaintiff exhibited marked functional limitations in restriction of activities of daily living, difficulties in maintaining social functioning, and deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner. Docket 10, p. 607.

9

To further emphasize the importance of the error in overlooking a treating source's opinion, one must also acknowledge the difficulty in treating, or determining, disability when the claimed disability stems from mental illness such as depression. In evaluating depression, the very nature of the illness often leads to little or no "objective medical evidence," such as laboratory findings or x-rays, to rely on in making a proper disability determination. This further emphasizes the important role that opinions and records produced by qualified treating sources with consistent, durational treatment relationships with plaintiffs, such as Communicare and Dr. Jackson have here, must play in determining disability.

To have ignored Dr. Jackson as a treating source because he was a successor in treatment who did not *appear* to have personally examined the plaintiff is to ignore the record. First and foremost, there is no affirmative indication in the records that Dr. Jackson never examined the plaintiff. To say as much is an assumption that ignores the very nature of mental health treatment of this kind, particularly at facilities like Communicare. The Commissioner herself all but admits this in her acknowledgment that Dr. Jackson succeeded the original treating psychiatrist in the plaintiff's treatment. Docket 15, p. 12.

Further, even if Dr. Jackson did not personally examine the plaintiff, his role in supervising treatment certainly qualifies his opinion as a treating source. After making his first appearance in the plaintiff's records in November 2012, Dr. Jackson appears to have supervised each treatment the plaintiff received as well as reviewed and prescribed the plaintiff's medications throughout. Docket 10, pp. 398-419, 485-520. This means in each of the roughly twenty-seven instances when Communicare treated the plaintiff for depression, the plaintiff was examined personally by a certified mental health professional and those treatments were

10

supervised and reviewed by an overseeing psychiatrist. Docket 10, pp. 398-419, 485-520. To have given that overseeing psychiatrist's opinion limited weight as opposed to the deference reserved for a treating source was an error by the ALJ that was not supported by substantial evidence.

## V. PLAINTIFF'S REMAINING ARGUMENTS

This action will be remanded to the ALJ for reconsideration of the opinions of the plaintiff's treating psychiatrist, Dr. Jackson, and the state agency consultant, Dr. Thomas. Because the court is remanding at this time for further consideration of these issues, the court need not address the merits of the plaintiff's remaining argument regarding the vocational expert testimony.

## VI. CONCLUSION

After a review of the evidence presented to the ALJ, this court finds that the ALJ's opinion was not supported by substantial evidence and did not uphold proper legal standards. Therefore, the matter must be remanded for further determination consistent with this opinion. A separate judgment in accordance with this Memorandum Opinion will issue this date.

This the 15th day of April, 2015.

                                                        /s/ S. Allan Alexander
                                                        UNITED STATES MAGISTRATE JUDGE